92 F.3d 1185
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty CRAWFORD, Plaintiff-Appellee,
v.
Dennis BOOKER; Virginia Williams; Michigan Department of
Social Services, Defendants,
Donna Newkirk-Stewart; Lawrence Wells, Defendants-Appellants.
 No. 94-2384.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1996.
 
 Before: SUHRHEINRICH and SILER, Circuit Judges; CARR, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, an employee at the Michigan Department of Social Services, sued four supervisory employees under 42 U.S.C. § 1983 for violations of her First and Fourteenth Amendment rights. Two defendants, Donna Newkirk-Stewart and Lawrence Wells, appeal the jury verdict in plaintiff's favor awarding her damages of $154,000. We REVERSE.
 
 I.
 
 2
 Plaintiff was employed by the Michigan Department of Social Services ("DSS") as a Child Protective Services ("CPS") worker. On December 1, 1991, she received a complaint from a local hospital that a child was suffering from severe trauma resulting from sexual abuse by a parent. The child eventually died.
 
 
 3
 During her investigation, plaintiff became aware that the file on the abused child had been closed in October 1991 after an incomplete investigation of a prior complaint. Plaintiff claims that the document indicating that the file had been closed was signed by defendants Newkirk-Stewart and Wells. Newkirk-Stewart was plaintiff's supervisor, and Wells was the DSS section manager responsible for the CPS activities at issue. Plaintiff discussed the case with Newkirk-Stewart, who ordered the file placed under the assumed name of "Cassandra." Plaintiff ultimately prepared the file for transfer to another county because Cassandra's mother had moved.
 
 
 4
 Plaintiff became concerned about this incident and other problems she perceived at CPS, including staff shortages and increasing workload. With coworkers, plaintiff participated in a December 1991 meeting at which defendants Newkirk-Stewart and Wells were present. At the meeting, plaintiff expressed concerns about staffing shortages and a significant backlog of cases. Additionally, she noted that if certain problems were not corrected, "another tragedy" could occur, referring to the Cassandra case.
 
 
 5
 On April 29, 1992, staff members sent a letter requesting another meeting, identifying plaintiff as the contact person. Also in April 1992, plaintiff began receiving criticism from Newkirk-Stewart about her job performance. Newkirk-Stewart took several files from plaintiff's desk without notifying plaintiff. Newkirk-Stewart kept three of the files as part of a surprise audit of plaintiff's work. There were no such audits of other staff members' files. On May 29, 1992, Newkirk-Stewart formally notified plaintiff that her entire caseload would be audited, and in the interim plaintiff would be reassigned as an intake worker. Wells participated in the review of plaintiff's files. Plaintiff notified the county DSS director and her union representative that Newkirk-Stewart's actions were a "continuation of the retaliatory acts."
 
 
 6
 Newkirk-Stewart thereafter notified plaintiff that there would be an investigatory conference regarding charges of falsification of agency records and gross neglect of duty. After the investigatory conference, plaintiff was issued a thirty-day suspension without pay. She was subsequently transferred to an adult community placement position, resulting in an $8,000 decrease in her annual salary.
 
 
 7
 Plaintiff brought this § 1983 action on September 11, 1992. After a five-day trial in May 1994, the jury returned a verdict against Newkirk-Stewart and Wells, awarding plaintiff $154,000. This appeal followed.
 
 II.
 
 8
 Defendants claim that the district court erred by denying their motion for judgment as a matter of law asserting that plaintiff's speech did not relate to a matter of public concern and was therefore not constitutionally protected. The trial court denied the motion and instead submitted the question to the jury.
 
 
 9
 Defendants in effect make two assignments of error: (1) the district court incorrectly denied its motion; and (2) the court then erroneously submitted the issue to the jury. We reach only the first argument because it is dispositive.
 
 
 10
 A state employee alleging adverse employment action in violation of the First Amendment must establish that: (1) the speech was constitutionally protected; and (2) the protected speech was a "substantial" or "motivating" factor in the decision to penalize the plaintiff. Stern v. Shouldice, 706 F.2d 742, 747 (6th Cir.), cert. denied, 464 U.S. 993 (1983).
 
 
 11
 The first element is an issue of law for the court to decide. Connick v. Myers, 461 U.S. 138, 148 n. 7 (1983); Stern, 706 F.2d at 747. The second element is a question of fact for the jury to decide. Stern, 706 F.2d at 747; Hildebrand v. Board of Trustees, 662 F.2d 439, 443 (6th Cir.1981), cert. denied, 456 U.S. 910 (1982).
 
 
 12
 The question of whether speech is protected is itself a two-step inquiry, and asks whether (1) the speech addresses a matter of public concern, and (2) the employer has an overriding state interest in efficient public service that would be undermined by the speech. Dambrot v. Central Mich. Univ., 55 F.3d 1177, 1186 (6th Cir.1995); Meyers v. City of Cincinnati, 934 F.2d 726, 729 (6th Cir.1991).
 
 
 13
 As an initial matter, we note that the alleged retaliation began no later than April 1992, prior to certain statements by plaintiff which she claims were protected speech. Obviously, statements made after the commencement of retaliatory acts cannot form the basis for a claim of retaliation. For example, plaintiff points to a discussion in late May 1992 with Fred Lawless of DSS, in which plaintiff spoke to Lawless about her belief that the Cassandra matter had been mishandled and the potential for future mishaps. This discussion occurred well after the initial audit of plaintiff's files and other alleged retaliatory acts, and thus cannot serve as the basis for her claim.
 
 
 14
 The only speech that predated the alleged retaliation and arguably relates to a matter of public concern is plaintiff's implicit reference to the Cassandra case at the December 1991 meeting. Plaintiff testified as follows about what was said at the meeting:
 
 
 15
 I expressed my concern over the high level of stress in the unit; that because of the backlog of paperwork and the fact that we were still short staffed, the amount of work coming in, that I was afraid that there may be another tragedy, another child dead or seriously injured because of the lack of proper resources that we had in the unit.
 
 
 16
 Plaintiff attempts to characterize her indirect reference to the Cassandra matter as protected speech on a matter of public concern. We disagree. We are not persuaded that plaintiff's offhand remark, made in the context of a meeting which focused primarily on staffing concerns internal to the agency, is sufficiently related to a matter of public concern to constitute protected speech. Mere tangential references to political, social or other community concerns cannot bring internal grievances into the realm of protected speech.
 
 
 17
 Absent a claim based on retaliation for protected speech, government officials have "wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Connick, 461 U.S. at 146. Because plaintiff can point to no protected speech that predated the alleged retaliation by defendants, we conclude that the district court incorrectly denied defendants' motion for judgment as a matter of law. Because this conclusion compels reversal, we need not consider the other factors necessary for plaintiff to establish liability or defendants' remaining arguments.
 
 III.
 
 18
 The judgment of the district court is REVERSED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation